If it please the Court, my name is Ross Begelman, I'm here today on behalf of the appellant Dina Zelenka, who is a relator in this False Claim Act claim under U.S.C. 3729A7, better known as the Reverse False Claims Act. Before I get started with my argument, I would respectfully request four minutes for rebuttal. Granted. Thank you, Your Honor. Your Honor, we're here today to determine whether the Court below erred in ruling that Congress intended, by using the word obligation under the Reverse False Claims aspect of the False Claims Act, to narrowly define that definition to not only a legal obligation at the time a false claim is made, but a specific fixed obligation. Well, suppose you tell me where in the complaint an obligation to pay appears, because the District Court dismissed the complaint under a Rule 12b-6 motion. It's not.  That's giving you all the credit for any allegation that you have, so that if you have alleged anything that would satisfy what is now our Phillips case, you should be back in court. But I can't find any place in the complaint where you allege an obligation to pay. Your Honor, I'll be glad to point it out to you. I can't put it in that paragraph, but I'll put you in substance what it says. Your Honor, we quote Statute 19 U.S.C. 1202. What paragraph of the complaint? Well, Your Honor, I can tell you that Honeywell and Lurphy acknowledges that we have on page 4 Lurphy, and we also quote 19 U.S.C. It's paragraph 26 you're looking for. Thank you. You're welcome. Paragraph 26 here. 19 U.S.C. 1202, and under that statute there are regulations that have been promulgated. We cite you to 19 C.F.R. 151, but I can also indicate to Your Honor that since the writing of that brief, we have been advised and we have determined that 19 C.F.R. 24-17 specifically says that any services provided by customs to an importer is subject to charge. But no services have been provided here. Where are the services? Well, yes, there has been services provided, Your Honor. Where are there inspections here for which there is an obligation to pay as a result of a fraudulent statement? Where they have avoided the obligation, is what you're asking? Yes, that's right. Yes, there is, Judge. This situation, Honeywell imports chemicals from Germany, precursors to explosives, to weapons, from Germany into the Port of Elizabeth and then stores them in Pennsylvania, New Jersey, across from Philadelphia. The CTPAT program allows the government. Without the CTPAT program, the government would surely have inspected a facility that did not meet security standards, would surely have inspected precursors to chemical weapons, to weapons being imported into the United States. When the false certification was made, and we all know what it was, we all know what you're alleging that the false certification here was, at that point, Honeywell was not even a member of CTPAT. I'm surprised that your friends across the aisle haven't made this point clear. They were applying to become a participant in CTPAT. They weren't even a member yet. So where was there an obligation to pay? Your Honor, I don't know if that is accurate or not. And I would tell Your Honor that they have an ongoing application. Once they make a representation, a certification that they're in compliance and they lie and they're not in compliance, and we've alleged that they've knowingly falsified that information to the government, then there is an ongoing obligation to reverse that false statement. Well, that may be in another situation. We're dealing with very specific language in the False Claims Act. And by the way, the United States says at page 6 of its brief, the false certification was submitted pursuant to defendant's initial application to participate in CTPAT. Well, Your Honor, they... We don't even get to your whether it's a potential or contingent obligation argument until they become a member of CTPAT. Well, Your Honor, they were a member of CTPAT and it was continuing... When the false certification was made? No. Well, Your Honor, when it was allowed to continue in existence, and I believe, Your Honor, that there were continuing certifications actually filed of compliance with the program. But putting that aside for one moment, Your Honor, remembering this is a 12v6 application, and we have not taken discovery. And what we're seeking here is the opportunity to explore all those questions that you're asking, and we were denied it. But, Your Honor, I think what you have to understand is you take the Conagra case, and the Conagra case, and I'm doing this by comparison, the Conagra case, there were inspection certifications that were falsified. Those cert... Conagra's a little bit different than this case. It is, Judge, and that's what I'm going to discuss. As a matter of fact, Conagra fills in almost what Judge Barry was just asking you about because there was action and an obligation in Conagra that I can't find here. Well, Judge, I'm going to answer that. In Conagra, if they would have filled out those false certifications, inspection certificates, and they would have then thrown them in the trash, there wouldn't have been a false claim because the false claim would not have accrued. The false claim doesn't accrue until they seek to utilize those inspection certificates. But the issue in Conagra was not whether to charge for replacement certificates. The issue in Conagra was whether to waive an existing obligation to pay. When it was discovered that the changes were necessary, there was an existing obligation to pay. There was an existing obligation to pay in Zelenka also, Your Honor, and that is quantified in 19 CFR 151 and 19 CFR 21-17. What is the existing obligation to pay in this case? The existing obligation, legal obligation, is to pay for services provided by Customs when they're rendered. In the future, when they will be rendered. Congress, Your Honor— But maybe they'll never be rendered. You know only 5% of cargo is inspected? Only 5%? Honeywell concedes that there were inspections. There were, but those were paid for, weren't they? No, Judge, I think under CFR 151 and 24-17, they must pay for all services provided by the government. In fact, Customs just raised that bounty in February. But where is there even an allegation that they haven't paid for services that were rendered? This is really about inspection fees that will be avoided because there will be in the future fewer inspections because they're a member of CPAC now. Are they discretionary fees? They are not discretionary. Under the statute and under the regulations, it says the Customs shall charge. What is— But it only charges for inspections that are made. It doesn't have to make an inspection in every instance. Well, Congress used the term avoid obligations. That's exactly what Honeywell— But there isn't an obligation until there is an inspection. No, Your Honor, the obligation deals with the law. There's a legal obligation to pay when the inspection occurs. I agree, Your Honor, when they falsify the statement, the false claim has not accrued. It accrues— Wait, wait, wait, wait, wait. When they falsify—when they submitted the false statement, the claim had not accrued. It accrues when they— There wasn't a—the obligation hadn't accrued. The obligation accrued—excuse me, Your Honor. I'm talking about the false claim. The false claim accrues when they submit it and then when there is services provided by Customs. They admit that services were avoided, Your Honor. So there is a false claim in the situation. Where do they admit that they avoided an obligation to pay here? Page 4 of Honeywell's brief. Which says? I don't know. I can read it to you. I mean, is that—that's your only evidence, one sentence for one of the briefs? We also allege the exact same thing in our brief. But if you look at what they—what they allege, it says, in addition to an import duty— Now, you're on page 4 of the NFI brief. Right, under Paragraph D, Customs Inspection. In addition to an import duty, which is calculated based on the classification— I can't hear you, Mr. Davis. I apologize, Judge. In addition to an import duty, which is calculated based on the classification of goods outlined in the tariff schedule and country of origin from the shipment, importers are also required to pay for the government services of customs inspections, which—when such inspections are performed. Yeah, that's fine. And so they acknowledge that. Wait, wait, wait. When they're performed? Where's their— Yeah, when? This is page 22, because what they do is they lie to avoid the inspection. I'm wondering where the case of controversy is here. Well, Judge, I'll tell you, Judge, we're here on 12b-6. If this was a summary judgment motion, I think your suggestion would be accurate. But we have a right to take—we have a right to take—I'm asking you to give us the right to take discovery. And if this was a summary judgment aspect, such as in the Sixth and Eighth Circuit cases, we would have a different argument and we'd be hard-pressed. But we seek to take discovery. We have alleged the obligation. We have alleged they avoided the obligation. The obligation's in law. The question's not whether there's a fixed dollar amount. The question's whether there's a legal obligation. And here there's a legal obligation to pay for services. It's in statute and it's in regulation, and they avoided it. All right, well, we'll give you one rebuttal. You've been way over your time. You have four minutes of rebuttal. Let's get to you next. Thank you, Judge Barry. I have one other question to ask Mr. Begelman, however. I'm not escaping that question. I don't understand why I have seen nothing in the briefs which pertain to your paragraph 27 in the complaint having to do with the disclosure of the inventory that exists for hazardous materials. Neither you nor anyone else has addressed it. Do I understand that that issue has been weighed? Your Honor, I'd like to do that. Would you like to think about that and take a look at it? Thank you, Your Honor. Let me put one question to you. You know, and I was thinking of the ordinary tort or fraud or misrepresentation in such instances. You have a misrepresentation that is relied on, and then you have to have quantifiable harm or damages. Isn't that the general theory of fraud? And why shouldn't that apply here, that you need a quantifiable harm? Excellent question. And the answer is that when Congress passed the Reverse False Claims Act in 1986, or the provisions that we call the Reverse False Claims Act, they specifically intended for a reverse false claim to be equal to an affirmative false claim under A1 and A2. And under A1 and A2, all that is needed is the approval of a claim, not the actual damages. You need liability under the False Claims Act. And if you've proven liability, then there are penalties resulting from the False Claims Act, even if no damages are shown. And I believe that is discussed in the government's brief, if not mine. And in this case, you have a reverse false claim. If the situation was that you must have damages at the moment that a reverse false claim is made, then by avoiding those obligations, by avoiding future payments, by lying to the government so they never discover what you're doing, there would never be a reverse false claim, and it would be contrary to Congress's intent. In the phrase of avoidance of an obligation, aren't we talking about a quantifiable obligation? No, I do not believe we are. I think we're talking about a legal obligation. We need to quantify it, perhaps before summary judgment. But that's what discovery is for. Or asking for is the ability to obtain evidence to prove our case. I believe you've led an adequate pleading to pass 12B6 scrutiny. All right, thank you. Thank you. All right. The United States? No, I think we have the United States first. May it please the Court. Steve Frank from the Justice Department on behalf of the United States of America. Why didn't you intervene, Mr. Frank? I beg your pardon? Why didn't you intervene rather than declining to intervene and filing an amicus brief? It's very common, and the Court should not take any influence one way or another, that the government does not intervene in a lot of these pre-trial cases at the district court level because we just have limited resources. If the government intervenes, it has determined the case has merit. So it adopts the case as its own and all the costs. What, if any, significance can we accord to the fact that you did not intervene here? None? Yes, that's correct. I'm often asked that question, and I go back to my people at Justice, and they just tell me that there are just so many, it's just a matter of resources, they intervene, and very few, and the Court really shouldn't call any influence on the merit. But I have very limited time, and I'm here for a very limited purpose. I am not here to discuss the merits. I'm not here to really make Rallager's case. I am here solely, the government wanted to file an amicus brief because there's an important statutory construction issue. We want to make sure that the Reverse False Claims Act cases are read, as Your Honor pointed out, the same way that affirmative cases are read. And when the district court read in the words fixed in front of obligation, it made it different under reverse claims than affirmative claims. My only question for you in this area is how are you defining fixed obligation? I read your papers to kind of go back and forth. Do you mean fixed amount? That among other things. Among other things. You have said at one point you castigate the district court saying he's required a fixed amount, which he didn't do. And then another point you seem to slide around, and then you keep coming back to fixed amount, fixed amount, fixed amount. Is that how you define the word fixed? I would like for this Court to reverse that portion of the opinion that suggests that it has to be a fixed amount at the time that the false statement is made. So the harm doesn't have to be quantifiable. That's right. That's all we want to say is that an obligation can accrue. It can be a potential obligation. It could come to fruition in the first. How about the inspection fees that Zelenka here is claiming? How about the inspection fees where inspections haven't even been programmed, proposed, or undertaken? I'm not here to undermine the later case, but I'm here also as an officer of the Court. We agree with what Judge Berry was getting at, that at some point it has to become concrete, that the mere making of a false statement without anything else happening is not a claim under the Reverse False Claim Act. At some point, and I don't know whether it's in the complaint or in discovery, a relator has to allege that not only did he make a false statement, but he tried to avoid a specific obligation. So that in this case, the relator would have to allege, and Your Honor is correct, the only allegation that I see is in paragraph 26, would have to allege that, in fact, Honeywell went through the program and that Honeywell avoided inspections because of its participation in CPPAC. But under your view, there have to have been inspections scheduled. They have to have gone through, or they have to have avoided inspections, and therefore avoided the obligation. And I think the relator, the government's position, is the relator has to both, has to allege that in his complaint, and I'm not here to say whether he did or did not, and two, if he did allege it in his complaint, should be given the opportunity in discovery to explore that with Honeywell and see whether these things actually happened. And I'm not here to comment on that. The government considers it very, very important because, as Judge Berry pointed out, many programs on the affirmative side, someone will make a false statement to get into the program, into a special HUD program or Medicare program or whatever, but the claim itself will not be made until much later. So how would you now frame the reverse fraud claim that is under Section 7, or under E? How would you now frame it to accommodate the interest that you are presenting to us? I would say that, under a plain language reading, Well, how would you frame it? If you were drawing the legislation, how would you frame it so that there would be no confusion, as you allege there is now, among the courts, that the courts would all know precisely what to do and when to do it? I think that the statute says it as it does because it says obligation. The Congress could have said a fixed obligation or not to include a contingent obligation, but it left this broad term, obligation. So that you would add the words in Section E, an obligation fixed or contingent. One could do that. I don't think one has to do that. The government's position here is this is a plain language case. Did Judge Irenas actually say that the reason that he was ruling as he did was because this was a contingent obligation? Yes, I think that the court felt that it was a contingent obligation. Well, he said that there had been no inspections that had been conducted for which there were any monies to be paid. That didn't mean that it's a contingent obligation. That's a different matter, and we're not here on that. I know your side of the House studiously avoids the sentence in his brief. He didn't say the amount has to be quantified now. He said just the opposite. He said, well, Zelenka is not required to precisely quantify the amount of the false claim prior to bringing her act. Isn't that what you really care about, that there doesn't have to be a quantified obligation at the time it's brought? But Judge Irenas didn't say there had to be. Well, I believe that he said that the obligation had to be somehow fixed, that it could not be contingent. Fixed before the misstatement. Yes, at the time of the misstatement. But he's not talking about an amount. Not an amount. But that's all we would like this court to do, is say that that language includes, as Your Honor said, and doesn't have to say it in there, fixed or contingent. Because here's the thing. If the wording just says obligation, that to me is plain language. It includes fixed or contingent. If there's any ambiguity about that, and I don't think there is, the court should look at the legislative history. No, the statute is clear. I think so. Absolutely. And no circuit, and including the Tenth Circuit in Conagra, really takes a different position. So I don't know what we have to clear up here. Well, I could go through the court's opinion, but the court can and the court's clerk. There are suggestions in the district court's opinion that contingent obligations, obligations that are not fixed at the time. Because there haven't been inspections. Are not included. It's kind of going back to my half-cubed comment, where's the case of controversy. Maybe they'll never be inspected. Well, and that is a different matter. Well, that's what he was really saying. Well, I would hope if the court would clarify the meaning of the word obligation, that it could be fixed or contingent, even though it might have to mature or approve later on, or have to be alleged that. That would satisfy the government. If the language of the statute is clear, it means an existing obligation, not one that comes to light later. No, not existing at the time that the false statement is made. A false statement. Any person who knowingly makes a false statement to conceal, avoid or decrease an obligation to pay or transmit money is liable. The government's point is that that obligation does not have to exist at the time the false statement is made. That is not the law in the affirmative area of the False Claims Act. As Your Honor pointed out, many times people will make a false statement to get into a program, but they do not actually submit the claim, which in this case would be the same thing as going through the inspection until much later on. Well, it's the same thing. I mean, if it's the same thing in the reverse false claims and the false claims, why did you need a reverse false claims amendment in 1986? I mean, if it's going to be the same thing. One goes one way, the other goes the other way. That's why it's not the same thing. The other is you're avoiding obligation. But it should be read the same way. Is there a legislative history that suggests that this statute is intended to be read the same way as the False Claims Act? Precisely. The legislative history says a person who makes a material representation to avoid paying money owed the government should be equally liable with one who does so to obtain money. In the Senate report, government's brief at 8, the Senate report also stressed at the same page it was meant to cover potential. But potential never made it into the statute. And just the use of the word potential in the legislative history shows that Congress knew that there was a difference between an obligation and a potential obligation. And it shows when it enacted the statute to just use the word obligation. My point is that under the plain language, and I think we all agree, an obligation can be fixed or it can be contingent. Congress chose not to limit it in either way. And I just think we shouldn't read in either one of those words. It should include both of those words. And that's all the government is here to make that point. Well, thanks very much. Thank you for your time. Appreciate it. All right. Let's move to the other side of the aisle now. We're being very active. We're being a very active court today, aren't we? Are we always? I always promise I won't ask any more questions for a while, but that would have to be a lie. He doesn't believe it. Yeah. Good morning, Your Honors. May it please the Court. Justin Lockwood for Appellee NFI Industries. Your Honors, the law in this circuit, I believe, is clear, and I believe, as Your Honors have already said. Would you keep your voice up and put that microphone so that it can pick it up? Yes, I'm sorry. Thank you. The law in this circuit is clear, and I believe, as Your Honors have suggested, that this case does not call for as many disagreements with the law of others. And that is that for a reverse call claim to be pledged, to be cognizable, to be viable, there must be a clear existing legal obligation at the time. What about Paragraph 27? You didn't address it. Neither did I see the plaintiff's address. What we don't see anywhere in the discussion below, either in Judge Arenas' opinion or even the brief below, any reliance upon that statute that's mentioned there. What we saw was reliance on, in effect, a pamphlet that is propounded by the customs service, not a statute, not a regulation, a pamphlet, which, by the way, if one reads its words, does not promise a reduction in any inspection fee. It suggests there may be a reduced number of inspections. Well, that would reduce any outlay of monies. I'm not comfortable with that assumption, Your Honor, because I have looked at the one statute very carefully that the appellant has called for the district court's attention and our attention here, and that was 19 U.S.C. Section 58C, specifically Subpart A, Subpart 9. The appellant points to this and says that there's a .21% ad valorem, the word she has used, I would really call it a duty, that is assessed to merchandise that is entered and released and processed. Those are not inspections. All merchandise that arrives in this country must be entered, it must be released, it must be processed. But you don't disagree with Zelenka that inspections would be conducted? I don't disagree that the customs service has the right and the obligation to make certain inspections at certain times. Wasn't that part of the program, the CPAC program, that if you apply for membership, you would, upon filling out the necessary application forms, be subjected to fewer inspections than non-members? That is one of the points of the program. But if one looks at the statute that we have called for our attention, it does not impose inspection fees. And, in fact, that statute in a particular subsection says that except for those fees that are called for in this 58C, Subsection A, including Subsection A9, except for those fees, there shall be no fees imposed, no charges, for cargo inspection. Your adversary just read a statement or a regulation that customs services shall require fees for inspection. It's a very general pronouncement that counsel has read, but I'm referring to 58C, Subsection E, Subsection 6, Subsection A, and then Subsection lower case I. It's really an alphabet soup to get through this statute. But it says right in the statute that unless you have a fee that's specifically permitted under Subsection A, which would include the A9 that Judge Arenas was dealing with, unless you have a fee that arises there, it says right here, there shall be no charges for any cargo inspection. So the very statute that the appellant has invited us to really rules out— This is all very—a little bit down the road, isn't it? Yes, it is, because I think the preliminary issue and the threshold issue, Your Honor, correctly characterize the fact that there is no clear and existing legal obligation to make a payment at the time that the alleged false statement— But you and your friend from Honeywell haven't really beaten that argument. I made that one up myself. I found that one all by myself, that at the time the false certification was made, they weren't even a member of CFAC. Honeywell wasn't even a member of CFAC. So how could there—almost by definition, there couldn't have been an obligation. I certainly want to give all the credit to Your Honor for that argument, but I think you'll find it in the brief if you look through it. If I look very hard, all right, I'll go back and I'll look again. And frankly, Your Honor, I think that— I'm not sure that Judge Arenas had the benefit of the, so to speak, of the Pensler opinion in ConAgra. I think the timing was such that that was not before him. But I would just say this, that the ConAgra case, which may be the case that the plaintiff invokes as perhaps the most favorable chair position, I don't think helps at all the plaintiff, because in ConAgra there was a very clear existing legal obligation at the time that someone altered or falsified or forged a certificate for those exportings of either animal hides or food wares. There was an existing legal obligation that was in the regulations, and that was to pay a fee for these certifications, these certificates. And in that case, what happened was that the exporter falsified a document at the time that he had an obligation to get a new one and pay for it. I think it was $32 a certificate for food wares and maybe a yet-to-be-determined specific amount for certifications for animal hides, because that's a slightly more complex issue, apparently, to assess and so forth. So the absolute amount of that fee for the animal hides certification may have been in question. But I think that case shows you that there was an existing legal obligation at the time that that fraudulent record was created to make a payment to the government, and the payment was avoided by means of that false and fraudulent statement. That is what's required under this act. Could you just take a step back regarding Honeywell's membership in CPAC? You say, Judge Barry, that they weren't even a member of CPAC. Do you agree with that? That appears to be the case. But was an application for membership? Had an application been made? There's no evidence of record that I could find when the agreement between Honeywell and CBP was entered into or when the approval was granted. Is there? But I think there doesn't seem to be any dispute here that at the time of the false certification, all of the procedures to get in had not been concluded. Correct? I believe that's right. And the pamphlet that you are not too fond of was attached to the complaint and relied on by the places, so we can consider it. And it does speak of the review process prior to obtaining certification, and this certification was just one of the steps. Well, that's correct. But isn't that the premise of Sipankar's suit, that the false statement was made in the application process and the false statement was made in order to avoid a certain number of inspections down the road? Well, that is the premise, the only premise that I can find, and that's one reason why I've made these comments about the statute that the appellant has invoked, 58C, and how when one parses the statute and sees that the fees provided for therein, therefore arrivals of merchandise, for arrivals of passengers, the advert alarm tax, there is no inspection fee, and in fact, the specific language I refer to. There are really two potentials. There is the potential they may not even become a member, and then if they do become a member as a result of the false certification, they may then be liable for inspection fees. So you really have two hurdles to juggle. There are two hurdles. And then, of course, Your Honor correctly cites, I think, data that was in the record that only about 5% of shipments are actually inspected. All shipments are entered, they're released, they're committed, they're unladed, all of those words that are in Title 19. But a very, very small number are actually inspected. So you don't know whether there will be any inspections, frankly. You know, apart from the hurdles that Zelenka has to go through, I was wondering about the government's position that we should read the statute plain language and consistent with the False Claims Act statute so as to allow for suits where the obligations have not been fixed. Do you have a problem? Well, I think that the government's problem really is with Judge Arminius's perhaps his first words, although I think Judge Barry has correctly pointed out that Judge Arminius has not actually been quantifiable at the time or fixed. But he is talking about death penalty. And I think that if you look at that Tenth Circuit opinion, we can see that part of the fee that was avoided, that was a clear existing legal obligation, was not quantifiable at the time the false certification was made because those that pertain to the animal hives. Conagra was a waiver of an existing obligation. There was an existing obligation, and the issue was whether it was waived. So I think that's the distinction. Well, I come back to those facts, Your Honor, simply to point out that there is a small part of the actual claim that might not have been quantifiable at the very moment that the certification was made. It might not have been fixed. But the actual fact of the obligation was absolutely definite, absolutely legally established at the time. And the fact of the obligation, the source of it, was the obligation to pay for a replacement certificate. If the price of that certificate might vary a few dollars here or there because of the nature of the shipment, that's not enough to make the claim flawed under Conagra. That's not enough to make the claim unviable. What I was thinking when I was listening to the government's position is the purpose of the statute, the purpose is to allow private lawsuits against other entities who have made misrepresentations in order to cheat the government. Right? Do you agree with that? It's a basic purpose. It's a fundamental purpose. Yes, Your Honor. Well, shouldn't we, in that light, read the statute broadly to allow suits for damages that have not been fixed? Yes, but not to do violence to the statutory entity. Why would that do violence to the statutory entity? Because in this case, what the statute calls for and the third circuit precedent, which I've explained beyond here, that there be an existing and clear legal obligation at the time of the misrepresentation. All right. I can accept that the inspections were not scheduled and so that you really have no specific quantifiable harm. I can accept that. But why do we have to limit the statute to instances where there is a specific quantifiable monetary loss? I think those are credential limits for the most part. But what I'd say to you is in the case that's before this Court, not only do you have all the speculation involved in whether there will be a certain number of inspections, but I would suggest to you that there is no clearly established legal basis for this assumption that everyone seems to be making that there is, in fact, an inspection fee. Because that is not what the statute says. All right. We've let you go much too long. Thank you very much. You'll hear from counsel for a hundred times. Thank you. May it please the Court, Holly Bracey on behalf of Honeywell International Incorporated. This Court should affirm the District Court's... Hold the microphone up to you. That's much better. Thank you. This Court should affirm the District Court's decision granting Honeywell's motion to submit for the following three reasons. First, the Court's ruling that the reverse false claim does not cover contingent with speculative obligations to consistent with this Court's holding in twin and the holdings of the Fifth, Sixth, and Eighth Circuit. Second, the relator has failed to identify any inspection fee that Honeywell could have plausibly avoided even if the allegations of Honeywell-made false statements were true. And finally, forcing a company such as Honeywell to litigate a case such as this one past the 12th and 16th would provide a powerful disincentive for companies to participate in the very programs that Congress has created, these partnerships between government and private industry. Supposing it were clear in this case that Honeywell would have to be subject to inspections. If it were clear. If it was clear that we don't know how many inspections, we don't know how much money, but it was clear that Honeywell was subject to inspections, would that be sufficient under this Act? The obligation to pay for inspections, my answer to the question just once is no. The obligation to pay for inspections still would not accrue until the inspections occur. But you know that the inspections are going to occur. There are specific inspections that have to take place. But the fees, if there were inspection fees, then the relator has not pointed to any fees. Because presently the statute for a fee does not allow for specific inspection fees. In fact, you pay the carbonized tariff or the Agilorum fee described by NFI's counsel in 58C, regardless of whether or not you're inspected. Well, that would mean that at the time that the fraudulent statement is made, you have to know exactly how much money you're going to save as a result of it. You're going to be able to cheat the government. You have to know the exact amount. Is that your reading of the statute? No, our reading is not that you have to know the exact amount. Our reading is that the obligation must exist at the time. The obligation to pay for inspections, if there were inspection fees, then the relator has not pointed to any fees. Well, that was my hypothetical. Honeywell knows that there are going to be inspections that are going to take place and a payment has to be made. We don't know how much. Why isn't that enough? It's not enough because the obligation to pay does not exist at the time the false statement was made. What obligation did exist, if any, at the time the false statement was made? There was no obligation implicating the Reverse False Claims Act. There may be other obligations that the law has to tell the truth and to certify if everything is correct, but there's no obligation pursuant to the Reverse False Claims Act, as the relator said. As this Court stated in Quinn, the plaintiff must prove that the defendant did not pay back to the government money or property that was obligated to him. And the relator has not alleged that there was any existing obligation at the time that the false statement was made. Similarly, in Quinn, the Eighth Circuit has the obligation to be a specific legal obligation at the time the false statement was made. We also take issue with... But the allegation here is a very straightforward one. Inspections have to take place. As a result of your fraudulent statement, you're going to have fewer inspections and therefore you will have a benefit. What's wrong with that as a basis for the reverse false claims? Because Zelenka's claims are speculative at best. As we've learned since our briefing and since our time in the district court, there is no definite inspection fee. There is no fee that Honeywell has avoided. She has not alleged that any fee has been avoided. She's only alleged that perhaps, maybe, in the future, if the government perhaps decides to inspect and decides to charge a fee, there might be something that Honeywell could avoid. But at the time that the statement is made, there is no present obligation to pay. All right. You say this lawsuit is premature. Maybe they should wait a little bit and then file it further down the road after inspections take place? Well, if Honeywell... And Honeywell would not do this. But if Honeywell were to lie on some sort of inspection document, then they could be subject to a penalty for that. But at the time that they're filing their suit application, they're not... There's no existing obligation to pay any fee for inspection or custom service or anything. Your position is that Judge Arenas was absolutely right in what he did and there was no change that had to be made regarding the jurisprudence that is found in his opinion. Is that right? Why didn't you ask me a question like that 30 years ago when I used to argue before you? LAUGHTER What about your status? That's off the record. What about your status with regard to the CPAP program? You had made an application, but you actually hadn't gotten into the process. Right, right. We were not yet members of CPAP. Are you members now? I do believe so. Have you had any inspections? You don't have to answer. And we take issue with the government's characterization of the legislative history in this case. The Senate report twice mentions the terms money owed and mentions that what they're trying to get at in adding amendments to the reverse false claims act is that they want to add common law causative actions for money owed. And the Eighth Circuit held that the deliberate use of a certain indicative past tense suggests that Congress intends to reverse false claims act provisions by only for the existing use. And the cases that the Senate report cites are clearly addressed. I'm sorry. No problem. The cases that the Senate cite are clearly addressed by the Fifth, Sixth, Eighth, and Eighth Circuit. They're what Congress once intended in passing the reverse false claims act has been affected by the court. Well, I think your argument really is, though, that the statutory language is clear and so we don't have to get to the legislative history. Isn't that your primary argument? Yes. Unless there are any other questions, I think we understand your position. Thank you very much. Thank you. This is the court. Here today, 12D6, appeal. I can tell this court that we intend, if allowed, to prove that there were going to be inspections. I can tell you how we're going to prove it, or at least one way of us proving it. And I'd like to tell you that the idea of if there was going to be inspections is not speculative. Inspections occur every day. We will show, if allowed to in discovery, what Honeywell's inspections were before they were a member of the CTPAT program, what they were after. We will compare Honeywell's inspections after they were a member of the CTPAT program to other companies that import chemical precursors to chemical weapons. What about Mr. Largary's argument that there's no evidence that there would be fees imposed by customs for any of these things? Well, that's not what Judge Irena said. And I point you to his opinion at appendix to our brief A8, where he clearly says the court interprets... What page are you on, sir? I'm sorry, Judge. Yeah. A8 of Judge Irena's opinion, where he says the court interprets this allegation to state that Honeywell used false statements to secure its participation in the CTPAT. As a result of its participation in CTPAT, fewer of Honeywell's shipments into the United States were inspected by CBF. This would have been... This had been not taken... This had not been a part in CTPAT. Fewer inspection fees would have had not been... They would have had fewer inspection fees and they would not have been a participant. But where in that does it say that inspection fees would be imposed? Fees would be imposed for these inspections. Thank you. And that is clearly articulated in the CFR... CFR that I quoted you earlier in my argument. I can give you the site. In fact, I have it here next to me. And there's actually a list of... There's a list. And this is a CFR... A 19 CFR 24.17, which lists, I believe, a number of criteria when inspection fees are charged. Honeywell was on the ongoing business of importing precursors to chemical weapons from Germany to the United States. Inspections occur all the time. And we're going to prove it if given the opportunity to take discovery. What we are here today is seeking the opportunity to prove our case. We have adequately alleged it, and Judge Irena's found that we adequately alleged the issue that there would be reduced fees. The obligation that we're talking about is the legal obligation, not a fixed price. But we will tell you that price. We will prove that price if given the opportunity. The legal obligation was articulated in the statute that we placed in our complaint and in our brief. And this regulation, as well as the other regulations I read you during my first argument, there was a legal obligation. What you should do is consider a timeline. This is no different than an affirmative claim when someone applies to the Medicaid program. Are you a licensed doctor? Yes, I am. Lie. They then go a year later and submit claims. The false statement was not necessarily the claim they submitted. It was the application to get into the Medicaid program. That's where the lie occurred. The accrual occurred when they submitted the claim, which then dates back to the lie. The same thing is true here. At the time they made their false statement, there was a legal duty in the United States for importers to pay inspection fees and pay for other services. They lie to get into a program that reduces or avoids the amount of inspections they get, and at some future date there's an accrual. And they benefit from their lie. Is that a specific benefit of the program? Yes. The program specifically said if you are a member, you will be subject to fewer inspections. It doesn't guarantee fewer inspections, but what it says is when we have our system of determining who we inspect and who we don't inspect, you will get credits that will lessen the likelihood of you being inspected. Likelihood? Yes. And therefore we're going to show, if given discovery, we're giving discovery that they have fewer inspections. I know you're talking about a mere possibility as opposed to a probable benefit. No, I'm not. No, I'm not. What I'm saying to you is that once given discovery, we will be able to show that, in fact, they receive services. Under CTPAC, they receive a customs official that helps them at the port, that greets them at the port. They're put in a fast lane. When did they become a member of CTPAC? When were they approved for CTPAC or signed an agreement? Well, I guess the only answer is that issue has been raised by you for the first time. You just told us all these things. None of them are of record yet. All these things that have happened since they became a member of CTPAC. I'll answer your question. And the fewer inspections and the fewer fees. And I'm just asking a simple question. When did they become a member of CTPAC? How can you make these grandiose statements about what you don't even know when they became a member? Or do you know? Well, Your Honor, I will find out in discovery exactly if they became a member. You don't even know now when they became a member? Do you know they became a member? Do you know they even became a member? Well, Your Honor, yes, I do. I know that they lectured around the country. During this time period, they lectured along with customs on how to take part in the CTPAC program, what are the requirements of the CTPAC program. Honeywell did, yes. Go on the Internet, look up CTPAC program for Honeywell, and there's brochures for the lectures they've given all over the country, seminars to other companies on how to participate and what are the requirements of the CTPAC program. They, in fact, may have been the original member of the CTPAC program. But, Your Honor, what's not speculative is there's a law that says you pay for inspections. If you've answered the question for Judge Barry, I see your red light's on. Oh, I apologize. But I have not heard an answer about paragraph 27. Are you going to react to it or not? Yes, I am, Judge. Good. You've got 30 seconds to react to it. The question about whether we're waiving that provision? Yes. Yes, we are, Judge. You are waiving that? Yes, Judge. Thank you. All right. We would like to have, within 10 days from today, a simultaneous letter memo from the parties about your position on the legal authority that there is or is not a legal authority for the fact that inspection fees will be imposed or will not be imposed. Both have thrown numbers at us today. If you would put those submissions in letter memorandums simultaneously to us within 10 days from this date, we would appreciate it. They need not be lengthy. Thank you. Thank you very much. Well argued. We'll take the case under revise.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.